508 So.2d 462 (1987)
FLORIDA FREEDOM NEWSPAPERS, INC., Petitioner,
v.
Honorable Don T. SIRMONS, Circuit Judge, Fourteenth Judicial Circuit, State of Florida, and Dempsey J. Barron, Respondents.
No. BQ-113.
District Court of Appeal of Florida, First District.
June 1, 1987.
Rehearing Denied July 1, 1987.
*463 Franklin R. Harrison and William A. Lewis, of Sale, Brown & Smoak, Panama City, for petitioner.
Sharon Lee Stedman, of Rumberger, Kirk, Caldwell, Cabaniss & Burke, Orlando, for respondent Barron.
Tallahassee Democrat, Inc./C. Gary Williams, Michael J. Glazer, and Timothy B. Elliott, of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, amicus curiae.
BARFIELD, Judge.
Petitioner contests the closing of civil divorce proceedings in the marriage of Dempsey J. Barron and Louverne Barron in the circuit court in Bay County, Florida. The trial judge's initial ruling was based on Article I, Section 23, Florida Constitution and Sentinel Communications Company v. Smith, 493 So.2d 1048 (Fla. 5th DCA 1986), rev. den., 503 So.2d 328 (Fla. 1987).[1] A subsequent ruling expanded on the rationale for closure but did not significantly change the legal basis. Our initial consideration of the closure order attempted to conform our holding to that of our sister court; however, upon further review, we are unable to accept the premise of the Sentinel Communications decision and respectfully disagree with our colleagues in the Fifth District. The decision in Sentinel Communications assumes there is "private civil litigation." Because we cannot agree with this premise, we cannot accept the rationale of our colleagues.
There is no private litigation in the courts of Florida. All proceedings before the trial judge are public proceedings. In some instances, otherwise open proceedings are closed because some information relevant to the proceedings should not be publicly disclosed. To close a proceeding before the trial judge, other than for reasons of confidentiality enumerated by the legislature[2] where public policy is presumed to exist, the court must have a compelling justification based upon a clearly discernible public policy that cannot be served by any means other than closure.
The provisions of Article I, Section 23 of the Florida Constitution do not create a right to private judicial proceedings. Quite the contrary, the privacy right precludes governmental intrusion into private lives and says nothing about the historical perspective of public proceedings before the trial judge. It also has no application to public records under chapter 119, Florida Statutes (1985).[3] The parties' selection of the judicial forum to resolve their differences *464 is not an intrusion by the government into the parties' lives.[4]
Courts are generally cognizant of the Fifth District Court's concern that the media's interest may be to "... learn, publish, and sell embarrassing assertions as to the intimate details of an individual citizen's private life... ."[5] The potential exercise of poor judgment or bad taste by the media is not the issue before the courts in such cases. Preserving the independence and integrity of the judicial process through open and publicly scrutinized judicial proceedings is the issue.
A strong and independent judiciary is the bulwark of a free society. If there were no public access to proceedings before the trial judge, there would be no safeguard for judicial independence nor any assurance of judicial integrity. It is the existence of the right of access that is critical to the court's autonomy, not the public's exercise of that right. Knowing the public can attend these proceedings and review judicial records helps guarantee that those matters will be conducted with due regard for the public's interest in a fair and impartial judiciary.
Knowing when to properly close a trial court proceeding is inextricably tied to our penchant for doing things by the numbers. We find no reason why the three-pronged test set forth in Miami Herald Publishing Company v. State, 363 So.2d 603 (Fla. 4th DCA 1978), will not work as well in civil cases[6] so long as the court continues to recognize that, if a reason has not been provided by the legislature, the interest to be protected must be one which arises from a compelling public purpose.[7]
The trial court found that the information sought to be kept private provided a "cogent reason to seal the file and close the proceedings." We do not find the facts upon which the trial court based this finding to be sufficiently compelling to require the proceedings be conducted in private, thereby denying the public, including the press, the right to attend these proceedings and the right to examine the court file. In essence, one of the parties wished to conduct the proceedings in private to prevent the disclosure of certain information the party would otherwise prefer not be made public. The information is of a somewhat general nature and not specifically tied to a domestic relations case.[8] The information is not related to the marital relationship nor its breakup, to the welfare of the children, nor to the marital property.[9] The *465 party affected suggests it is related to present and future financial support. This may be so, but we do not find this reason to be sufficiently compelling, rising to the level that would deny the party an opportunity to receive a fair trial, to justify closing these proceedings.
The orders of the trial court sealing the file and closing the proceedings are REVERSED. The public shall be permitted access to the court file and the transcript or reporter's notes of any proceedings in the trial court.
ERVIN, J., concurs.
NIMMONS, J., concurs, with written opinion.
NIMMONS, Judge, concurring,
I concur in the result only.
To the extent that the court's opinion may be read to suggest that judicial records are or should be governed under Chapter 119, Florida Statutes, as public records, I respectfully disagree. I suggest that serious separation of powers questions would be implicated were we to hold that records of judicial proceedings were governed by Chapter 119. See In Re The Florida Bar, 398 So.2d 446 (Fla. 1981); Johnson v. State, 336 So.2d 93 (Fla. 1976); compare Palm Beach Newspapers, Inc. v. Burk, 504 So.2d 378 (Fla. 1987). Of course, we are dealing in the instant case not only with access to records but also access to judicial proceedings.
Further, I take issue with the court's indication that the Florida constitutional provision for the right of privacy under Article I, section 23[1] may not legitimately be taken into consideration by trial courts in the determination of whether access to a civil court proceeding by the public and the press should be limited or denied. While I agree with the majority's statement that Article I, section 23 does not create a right to private judicial proceedings, it seems to me that such Florida constitutional provision deserves to be weighed as a significant factor in civil cases, particularly those in which the public's interests are not involved. The Florida Supreme Court has had occasion to emphasize the significance of this relatively new provision of the Florida Constitution:
Since the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and succinctly provides for a strong right of privacy not found in the United States Constitution, it can only be concluded that the right is much broader in scope than that of the Federal Constitution.
Winfield v. Division of Pari-Mutuel Wagering, Department of Business Regulation, 477 So.2d 544, 548 (Fla. 1985).
I do not agree with the Fourth District's treatment of the suggestion that Article I, section 23 may have a legitimate role in closure matters in civil cases. Essentially, the Fourth District's answer to that suggestion is that civil litigants simply give up their constitutional right of privacy by becoming litigants in our judicial system. Goldberg v. Johnson, 485 So.2d 1386, 1389 (Fla. 4th DCA 1986).
In my view, petitioner/Florida Freedom Newspapers' and the public's right of access to the court proceedings and judicial records in the subject case was grounded upon common law principles. See Sentinel Star Company v. Edwards, 387 So.2d 367 (Fla. 5th DCA 1980); State ex rel. Miami Hearld Publishing Company v. McIntosh, 340 So.2d 904 (Fla. 1977). Florida Freedom also contends that the lower court's order was a denial of its First Amendment rights. Although the Supreme Court has held that the First Amendment guarantees to the public and the press of access to criminal cases, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), Globe Newspaper Co. *466 v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), the Supreme Court has not extended the First Amendment guarantee to civil cases.[2] Some appellate courts have so extended application of the First Amendment to civil cases. E.g. Publicker Industries v. Cohen, 733 F.2d 1059, 1071 (3rd Cir.1984) and Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1178-79 (6th Cir.1983); compare Wilson v. American Motors Corp., 759 F.2d 1568 (11th Cir.1985).
We need not decide whether the First Amendment is applicable in the closure of civil cases. Under the facts of the instant case, it makes no difference whether Florida Freedom was relying upon its common law right of access or was entitled to assert in addition a constitutional ground under the First Amendment. This is so because the grounds for closure presented by Barron and relied upon by the trial court were insufficient to overcome the heavy common law presumption in favor of access  even weighing, as I would, on the side of closure the parties' rights under Article I, section 23.
Finally, I question the court's reliance upon the three-prong test set forth in Miami Herald Publishing Company v. State, 363 So.2d 603 (Fla. 4th DCA 1978), a test which was fashioned for criminal cases and which does not seem appropriate for application in civil cases. However, if such test is to be used in civil cases, it seems to me that the test should be modified to incorporate the privacy interests of persons under the Florida Constitution, particularly in cases where the public's interests are not involved.
NOTES
[1] Incorrectly cited as Orlando Sentinel Communications Company v. Salfi in the trial court order.
[2] § 119.07, Florida Statutes (1985).
[3] Judicial court proceedings may be encompassed by section 119.011(2), Florida Statutes (1985), but it is doubtful the Florida Supreme Court would agree. See In Re The Florida Bar, 398 So.2d 446 (Fla. 1981).
[4] The parties can resolve their domestic disputes privately and only submit to the court for the legal dissolution of the marriage, in which case the only findings to be made by the trial court are that it has jurisdiction and that the marriage is irretrievably broken.
[5] Sentinel Communications Company v. Smith, 493 So.2d 1048, 1049 (Fla. 5th DCA 1986).
[6] Goldberg v. Johnson, 485 So.2d 1386 (Fla. 4th DCA 1986); Dept. of Health and Rehabilitative Services v. Tallahassee Democrat, Inc., 481 So.2d 958 (Fla. 1st DCA 1986).
[7] The trial court's order accomplished two results: It sealed a court record and it closed future judicial proceedings. When a motion is made to close a record, a trial court may enter an order sealing the file and then hold a subsequent hearing on whether the file should be open. However, notice of an order sealing a court file should be posted in the courthouse in a conspicuous place so that interested parties, the public or the press may move for reconsideration. State ex rel. Tallahassee Democrat v. Cooksey, 371 So.2d 207 (Fla. 1st DCA 1979). As to closure of judicial proceedings, the supreme court has held that the news media as a surrogate of the public is entitled to prior notice and an opportunity to be heard when a motion for closure of judicial proceedings is presented. Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982). See also Palm Beach Newspapers, Inc. v. Cook, 434 So.2d 355 (Fla. 4th DCA 1983). Neither procedure was followed in this case.
[8] This information is of a nature that it would be relevant to many other types of civil proceedings, such as worker's compensation cases, personal injury cases, or possibly insurance coverage disputes. If this information was sufficiently compelling to close this proceeding, it would follow that it would be sufficiently compelling to close those other types of proceedings as well. We cannot accept, nor do we believe the trial court would, that these other types of proceedings could be closed based upon the information sought to be kept private in this case.
[9] This factual basis further distinguishes this case from Sentinel Communications Company v. Smith, 493 So.2d at 1048, where closure was predicated in part upon the protection of the interests of the minor children.
[1] Article I, section 23, which was approved by the voters of Florida in 1980, provides:

Right of privacy.  Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
[2] In a concurring opinion in Globe, Justice O'Connor stated that she did not interpret the majority opinion to carry any implications outside the context of criminal trials. 457 U.S. at 611, 102 S.Ct. at 2622.